IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| NYAMUOCH THOMAS DUOTH,<br><br>Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Acting Attorney General of the United States; DAVID VENTURELLA, Acting Director, Immigration and Customs Enforcement; DAVID EASTERWOOD, St. Paul Field Office Director; ANDY BROWN, Sheriff of Pottawattamie County, Iowa.<br><br>Respondents. | **1:26-cv-00024-SHL-HCA**<br><br><br>**ORDER GRANTING VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION.

Petitioner Nyamuoch Thomas Duoth, a citizen of South Sudan, is subject to a final order of removal which, among other things, defers removal to South Suden under the Convention Against Torture. She has been detained for more than six months while Respondents seek travel documents to remove her to Ethiopia. She brings this Petition for Writ of Habeas Corpus alleging violation of her due process rights under *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). (ECF 1.) Having fully reviewed the record, the Court agrees and therefore GRANTS her Petition for Writ of Habeas Corpus.

## II.    BACKGROUND.

Petitioner was born in a refugee camp in Ethiopia and is a citizen of South Sudan. (ECF 1, ¶¶ 2–3; ECF 8-1, ¶ 12.) She arrived in the United States in 1994 at the age of four as a refugee. (ECF 8-1, ¶ 13; ECF 7-2, p. 1.) In August 1995, Petitioner's status was adjusted to Lawful Permanent Resident. (ECF 8-1, ¶ 14; ECF 7-2, p. 1.) From 2008 to 2017, Petitioner was convicted of multiple criminal offenses, including resisting arrest and shoplifting, as well assault on an officer, for which she was sentenced to a term of imprisonment of 24–48 months. (ECF 8-1, ¶¶ 19, 20; ECF 7-2, pp. 1, 4.) In 2011, she was arrested and put into removal proceedings before being granted relief/cancellation of removal in October 2012. (ECF 8-1, ¶ 15.)

In May 2020, ICE officers encountered Petitioner at the Lancaster County Jail during a routine jail screening, where she was in custody for driving during revocation. (ECF 8-1, ¶ 16.) ICE officers determined that she was subject to removal due to her criminal history and lodged a detainer. (Id.) Petitioner was issued a Notice to Appear charging removability under Sections 237(a)(2)(A)(ii) and (iii) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. 1227(a)(2)(A)(ii) and (iii)). (ECF 8-1, ¶ 18; ECF 7-2.) In September 2020, an immigration judge order Petitioner removed to South Sudan or, in the alternative, Ethiopia. (ECF 8-1, ¶ 21; ECF 7-4.) In August 2021, the Board of Immigration Appeals ("BIA") affirmed the immigration judge's decision and denied Petitioner's applications for asylum and withholding of removal. (ECF 8-1, ¶¶ 22–23; ECF 7-5.) The Eighth Circuit denied her petition for review. *Duoth v. Garland*, No. 21-3083, 2022 WL 16847663, at *1 (8th Cir. Nov. 10, 2022).

In May 2022, Petitioner was released on an Order of Supervision upon a determination that there was not a significant likelihood of removal in the reasonably foreseeable future. (ECF 1, ¶ 5; ECF 8-1, ¶ 24; ECF 7-7.) In March 2025, ICE re-detained Petitioner. (ECF 1, ¶ 6; ECF 8-1, ¶ 25; ECF 7-7.) ICE served her with a Notice of Revocation of Release stating that "ICE received a travel document to carry out [her] removal" to South Sudan and that "[t]here is a significant likelihood of removal in the reasonably foreseeable future." (Id.) Petitioner moved for a stay of removal and to reopen her case due to changed country conditions in South Sudan. (ECF 1, ¶ 7; ECF 8-1, ¶ 26.) The BIA granted the request for a stay of removal. (ECF 8-1, ¶ 27; ECF 7-8.) In September 2025, the BIA granted Petitioner's motion to reopen her case due to changed country conditions in South Sudan. (ECF 1, ¶ 8; ECF 8-1, ¶ 28.) The BIA remanded to the immigration court for entry of a new decision. (ECF 7-9.)

On November 26, 2025, an immigration judge again ordered Petitioner removed to South Sudan, or in the alternative, Ethiopia. (ECF 1, ¶ 9; ECF 8-1, ¶ 29; ECF 7-10.) While asylum and withholding of removal were denied, the immigration judge granted Petitioner's application for deferral of removal to South Sudan under the Convention Against Torture ("CAT"). (ECF 1, ¶ 10; ECF 8-1, ¶¶ 29, 30; ECF 7-10.) Petitioner did not appeal, and the order became final on December 26, 2025. (ECF 1, ¶ 11; ECF 1-5, p. 1.) Petitioner has been detained since that time. (ECF 1, ¶ 12.)

Meanwhile, on December 14, 2025, ICE sent a travel document request to the Embassy of Ethiopia. (ECF 8-1, ¶ 31; ECF 7-11.) ICE requested that Ethiopia "issue a passport or other suitable travel document to [Petitioner] within 30 days of this request." (ECF 7-11, p. 2.) In March 2026,

ICE conducted a 90-day custody review and decided to keep Petitioner in custody because "ICE expects to receive necessary travel documents to effectuate your removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and in public interest." (ECF 1, ¶ 13; ECF 1-5.) Deportation Officer Daniel Archer attested that "ICE requested an update on Ethiopian travel document interviews" on April 30, 2026. (ECF 8-1, ¶ 32.) As of June 23, 2026, ICE decided to continue detention. (ECF 1, ¶ 14; ECF 7-12.) The Decision to Continue Detention recognizes that Petitioner's removal to South Sudan is "withheld or deferred," but states that "ICE is actively working with the Department of State and the Department of Homeland Security on removal to a third country." (ECF 7-12, p. 1.) The attached document, entitled "HQ POCR Checklist for 241.13 Reviews," indicates that Petitioner's case is beyond the 180-day mark and Ethiopia is the only country where ICE requested travel documents. (Id., p. 3.) USCIS denied Petitioner's petition for a U-visa. (ECF 8-1, ¶ 35.) Petitioner remains in ICE custody. (ECF 1, ¶ 1; ECF 8-1, ¶ 36.)

On July 1, 2026, Petitioner filed this Verified Petition for Habeas Corpus. (ECF 1.) She claims Respondents are violating her right to due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Id.) The Government maintains that Petitioner's detention is appropriate under governing statutes and regulations, and that she "has not proven that there is no significant likelihood of removal in the reasonably foreseeable future." (ECF 7, p. 2.) In her reply, Petitioner maintains that Respondents have not rebutted the presumption that her detention is unreasonable and accuses Respondents of inaccurately citing an Eighth Circuit case. (ECF 9.) Petitioner requested a hearing, but the Court concludes that this is unnecessary.

## III.    LEGAL STANDARD.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[sh]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas*, 533 U.S at 687). Petitioner bears the burden of proving by a preponderance of the evidence that her detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

## IV.    LEGAL ANALYSIS.

Following an order to remove a noncitizen, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). The statute permits detention of a noncitizen beyond the ninety-day removal period where the noncitizen is "removable under section … 1227(a)(2) … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id.* § 1231(a)(6). "However, even if an exception permitting detention outside the ninety-day removal period applies, noncitizens may not be held indefinitely." Order Granting Petitioner's Petition for Writ of Habeas Corpus at 5, *Bankevich v. Bondi*, No. 3:26-cv-00019-RGE-SBJ (S.D. Iowa Mar. 11, 2027) (citing *Zadvydas*, 533 U.S. at 689–90, for the proposition that § 1231(a)(6) "does not permit indefinite detention"); *see also Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 871 (S.D. Iowa 2025) ("A noncitizen may be detained beyond the default 90-day removal period, but not indefinitely.").

"It is presumptively reasonable for the government to detain the alien for six months or less, but after that time the government must show a significant likelihood of removal in the reasonably foreseeable future." *Bah v. Cangemi*, 548 F.3d 680, 683 (8th Cir. 2008). In effect, this means that if the noncitizen makes a showing that there is no significant likelihood of removal in the reasonably foreseeable future, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. "The *Zadvydas* decision 'does not mean that every alien not removed must be released after six months,' but rather that 'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Bah*, 548 F.3d 680 at 683 (quoting *Zadvydas*, 533 U.S. at 701). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

Here, Petitioner was released on an order of supervision in May 2022 because there was no significant likelihood of removal in the reasonably foreseeable future. She was re-detained in March 2025 after ICE received travel documents to send her to South Sudan. Subsequently, however, an immigration judge granted her application for deferral of removal to South Sudan under CAT. More than six months have elapsed since her most recent order of removal became final in December 2025, yet Petitioner is still in ICE custody and has not been removed. She asserts that there is not a significant likelihood of removal in the reasonably foreseeable future because

there is no reason to believe Respondents will obtain travel documents to Ethiopia due to (a) their lack of success in doing so up to this point, and (b) the fact that Petitioner is not an Ethiopian citizen. (ECF 1, ¶¶ 53–54.)

Respondents fail to rebut this showing. The record reflects that the only country from which ICE has pursued travel documents is Ethiopia. (ECF 7-12, p. 3.) Respondents asked for documents from Ethiopia on December 14, 2025. (ECF 7-11.) At that time, Respondents asked Ethiopia to issue travel documents within thirty days. Ethiopia, apparently, did not. (Id.) Respondents assert that they "requested an update on Ethiopian travel document interviews" in April 2026 but do not say whether they received any response, much less the nature of the response. (ECF 8-1, ¶ 32.) Respondents also submit an HQ POCR checklist dated June 23, 2026, but all it says is that Petitioner "is a native and citizen of South Sudan. ICE is actively working with the Department of States and the Department of Homeland Security on removal to a third county." (ECF 1-6, p. 3.) The document does not otherwise include any details on the actions taken or what is meant by ICE "actively working" on removal.

Respondents' brief is similarly vague and conclusory. They argue:

> [O]n July 8, 2026, the DO was informed via email by HQ-Removal and International Operations-Africa, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement that Ethiopia is working through cases submitted for interview, including this one. Interviews occur according to their scheduling, and with their Ministry of Foreign Affairs in Ethiopia. Their process is lengthy due to interviews and in-country investigations for cases without substantiating identity documents. HQ-Removal and International Operations Africa advised it would request an expedited scheduling for Petitioner. Admittedly, Petitioner cannot be removed to her home country, but ICE is methodically trying to remove her to another country willing to accept her. The process remains ongoing.

(ECF 7, p. 15.) Respondents do not attach the referenced email to their filing, nor do they provide any meaningful information about what "lengthy" means in this context, whether they have, in fact, requested "expedited scheduling," whether Ethiopia responded to any such request, how long the process would take if "expedited," or how long the process would take it the expedited request is not granted. Respondents further fail to describe in any detail what actions, specifically, they have taken in "methodically trying to remove her to another country willing to accept her"; i.e., if they simply are referring to the letter and two emails to Ethiopia as noted in the record or if something else has occurred. (Id.) In short, Respondents offer no meaningful evidence or information as to the likelihood of Ethiopia accepting Petitioner and providing the required travel

documents. *See e.g.*, *Tesfamariam v. Noem*, No. 1:26-CV-00363, 2026 WL 1045723, at *5 (W.D. Tex. Apr. 15, 2026) (rejecting the Government's reliance on similarly vague information to establish a significant likelihood of removal in the reasonably foreseeable future); *Edin v. Blanche*, No. C26-1208, 2026 WL 1256141, at *5 (W.D. Wash. May 7, 2026) (similar).

District courts in the Southern District of Iowa and elsewhere have concluded that the Government's bare assertion that it is in the process of obtaining a travel document is not sufficient to demonstrate a significant likelihood of removal in the reasonably foreseeable future. *See Phongsavanh*, 809 F. Supp. 3d at 869–72; Order Granting Petitioner's Petition for Writ of Habeas Corpus, *Bankevich*, No. 3:26-cv-00019-RGE-SBJ; *Edin*, 2026 WL 1256141, at *4 (fact that Ethiopian Embassy "gave a vague timeline for travel documents generally—not a timeline specific to Petitioner" did not demonstrate reasonable likelihood of removal); *Tran v. Noem*, No. 1:25-cv-01523, 2025 WL 3268491, at *3 (E.D. Cal. Nov. 24, 2025) (assertion that the Government was "actively working on obtaining a travel" is insufficient to show removal was reasonably foreseeable); *Hambarsonpour v. Bondi*, No. C25-1802, 2025 WL 3251155, at *2-3 (W.D. Wash. Nov. 21, 2025) (assertion that "a travel document is significantly likely to issue in the reasonably foreseeable future" is insufficient). Similarly, courts have granted habeas relief where—as is the case here—the Government could not identify any progress made toward removal since detention began or any country willing to accept the petitioner. *See Yee S. v. Bondi*, 806 F. Supp. 3d 894, 901 (D. Minn. 2025); *Roble v. Bondi*, 803 F. Supp. 3d 766, 773–74 (D. Minn. 2025). Courts also have refused to find a petitioner's removal significantly likely in the foreseeable future where—as is the case here—the Government "provided scant information" about "what concrete steps ICE has taken" or the anticipated outcome of such requests. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass 2025).

Moreover, "the Government also fails to show [Petitioner's] removal to a third country is more likely in the reasonably foreseeable future, especially given that ICE was previously unable to remove [Petitioner] to a third country in [2022]." *Roble*, 803 F. Supp. 3d at 773. Ethiopia was identified as an alternative country for removal in her 2020 removal order, which became final in 2021. (ECF 7-4; ECF 7-5.) At no point between then and now have Respondents succeeded in removing her to Ethiopia. Respondents released her on an order of supervision in 2022 precisely because removal was unlikely in the reasonably foreseeable future. (ECF 8-1, ¶ 24.) Respondents'

efforts, as alleged in these filing, provide no assurance that the Respondents are any closer to effecting Petitioner's removal to Ethiopia now.

Respondents make other arguments, including suggesting that Petitioner's criminal history warrants ongoing detention. (ECF 7, pp. 3–4, 13.) This argument is hard to take seriously given that Petitioner's criminal history comes from 2017 and earlier years, but Petitioner was on release in the community without incident for most of the years since then, including the period from May 2022 to March 2025 when she was released due to there being no significant likelihood of removal in the reasonably foreseeable future. This means that Petitioner has already shown in circumstances identical to those present here that she can safely be released. If *Zadvydas* required release in May 2022 (which the Government implicitly admitted when it in fact released her that month), then surely it does so today, too.

The bottom line is that Petitioner has shown that there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents have failed to rebut that showing. Petitioner therefore must be released.

## V.   CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1.  Petitioner's Verified Petition for Writ of Habeas Corpus (ECF 1) is GRANTED.

2.  If Petitioner is in Iowa, Respondents must immediately release her from custody. If Petitioner is not in Iowa, Respondents must return her to Iowa within twenty-four hours and then immediately release her from custody. Respondents shall release Petitioner with all of her personal effects, including purse/wallet, driver's license, immigration papers, passport, cell phones, and keys.

3.  Respondents shall release Petitioner under conditions consistent with applicable statutory and regulatory authorities.

4.  Within three days of the date of this Order, the Parties shall confirm that Petitioner has been released as required by this Order

**IT IS SO ORDERED.**

Dated: July 16, 2026

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE

7